SOUTHERN ANTHRACITE COAL MINING COMPANY *v.* SMITH.

## Opinion delivered October 20, 1919.

1. MASTER AND SERVANT—INJURY TO MINER—PROOF OF SMOKE IN MINE.—After a blast, plaintiff, a miner in appellant's employ, entered the mine and was injured by the falling of a large rock. The complaint did not allege that the injury was in any way occasioned by smoke in the mine, but plaintiff introduced evidence showing that condition. *Held*, such evidence was admissible where appellant pleaded assumed risk and contributory negligence.

2. SAME — SAME — SAME — CONTRIBUTORY NEGLIGENCE.—Under the the facts as set out above, plaintiff *held* not guilty of contributory negligence.

3. SAME—SAME—SAME—OBVIOUS DANGER.—Plaintiff, a miner, was injured, when a rock fell upon him from the roof of the mine. *Held*, it was the duty of the employer to inspect for and warn of danger, and that the danger was not so obvious that it could be said that plaintiff assumed the risk as a matter of law.

Appeal from Pope Circuit Court; *A. B. Priddy*, Judge; affirmed.

*Hays & Ward,* for appellant.

1.    All evidence and statements of counsel as to a "smoky condition" of the entry were inadmissible and should have been excluded, as there was no allegation in the complaint that such a condition contributed to the injury, nor did counsel for plaintiff ask for an amendment to conform to the proof.    124 Ark. 455; 113 *Id.* 359; 102 *Id.* 581; 85 *Id.* 325; 31 Cyc. 680; Am. Ann. Cases 1912 A, 638 and note.

2.    Under the facts of the case the court should have directed a verdict for defendant, as plaintiff was guilty of contributory negligence and assumed the risk.    95 Ark. 560; 112 *Id.* 446; 188 S. W. 549; 81 Ark. 343; 88 *Id.* 243; 122 *Id.* 552; 100 *Id.* 156.

3.    The court erred in giving instruction No. 1 for plaintiff because it told the jury that the master failed to furnish the servant a safe place to work and imposed on the master an additional duty to make a reasonable inspection in order to render the working place reasonably safe.    97 Ark. 187; 105 *Id.* 205.

Instruction No. 2 asked by defendant should have been given.    99 Ark. 537.

4.    In view of the facts that (1) plaintiff was allowed to introduce improper evidence; (2) that plaintiff in doing his work created a condition causing his injury; (3) that plaintiff failed to heed the warning that the rock was likely to fall and continued to work without making any inspection or examination for his own safety; (4) that in the light of attending circumstances defendant could not have anticipated the condition of plaintiff's working place brought about by the progress of the work; (5) that the court refused to give instructions asked by defendant on assumed risk and contributory negligence; (6) that the case was submitted to the jury upon the proposition that the company "failed to furnish a safe place to work," and (7) that the court refused to withdraw from the jury all evidence and argument of counsel as to the presence of smoke at plaintiff's working place, etc., the judgment should be reversed.

*H. H. Ragon, J. T. Bullock, G. O. Patterson* and *R. A. Ragsdale,* for appellee.

Appellant's contentions as to contributory negligence and assumed risk, etc., are not well taken. Appellee did not know of the danger, nor was it obvious; the duty of maintaining the entry in safe condition was upon appellant. It was not the servant's duty to inspect, nor make examination for defects. 4 Labatt on M. & S., § 1330; 48 Ark. 333. That was the master's duty. *Ib.;* 4 Labatt, § § 1335, 1338, 1311.

A servant only assumes the ordinary risks incident to his employment. He does not assume the risks of danger arising out of the master's negligence. 95 Ark. 291; 87 *Id.* 217.

There are no errors, and the judgment should be affirmed.

HUMPHREYS, J.   Appellee instituted suit against appellant in the Pope Circuit Court to recover damages on account of personal injuries received, through the alleged negligence of appellant, while employed by it as a laborer in its coal mine. The allegation of negligence contained in the complaint was that the agents and officers of appellant failed to prop the roof and take down loose and dangerous slate and rock in the entry where appellee was working, which fell upon and injured him.

Appellant answered, denying the allegation of negligence on its part, and pleading, as further defenses, contributory negligence and assumed risk on the part of appellee, and that the injuries were the result of an accident.

The cause was submitted to a jury upon the pleadings, evidence adduced and instructions of the court, upon which a verdict was returned for appellee in the sum of $2,000. A judgment was rendered in accordance with the verdict, from which an appeal has been properly prosecuted to this court.

The facts are, in substance, as follows: Appellant was operating a coal mine near Russellville, in said

county.   Appellee, an experienced coal miner, was an em-
ployee, employed to turn a room-neck on the third west
entry in the mine.   The work assigned to him was marked
off by the pit boss and was a room-neck to the fifth room,
about thirty feet from the head of the entry.   The entry
was five and a half feet high, seven feet wide at the bot-
tom and five feet wide at the top.   The side of the entry
was called the rib, and the top, the roof.   The entry ran
east and west and the rooms were formed by digging at
right angles from the side or rib of the entry.   The entry
contained a track in the center for the purpose of hauling
coal out.   The entry was also used as a passageway for
the employees going to and from their work, and in which
to stand when turning room-necks.   It was the duty of
the appellant company to keep the top or roof of the
entry securely propped, and to take down such loose
rock and slate from the top, or roof, as would be likely to
fall and injure its employees. · In turning the room-
neck, it was necessary at first to stand in the entry for
the purpose of digging or blasting it.   Near the top of
the rib or wall where appellee was to turn a room-neck,
a large rock, about eight inches thick and from six to
eight feet wide, stuck out from the entry wall from eight-
een inches to two feet.

The evidence tended to show that the rock extended
into and feathered out in the roof and constituted a part
of the roof of the entry.   This rock was left protruding
at the time the entry was driven, and had remained in
that position for several weeks.   The pit boss had notice
of that fact, and testified in the case that "it would have
been safer for the men working under it had the com-
pany removed it."   Other witnesses testified that the
way it hung out over the entry rendered it dangerous.
The rock was about two and a half feet above the coal
that appellee was to remove in turning the room-neck.
On the day of the injury he put two shots under the coal
near the bottom of the wall.   These shots were fired at
about 11:30 o'clock while appellee and other employees
had gone to dinner.

Upon their return at 12 o'clock, they waited about fifteen minutes for the smoke to partially dissipate before going to work. Alex Gardner entered first, and the coal diggers, including appellee, followed. Upon reaching the room-neck appellee was turning, it was discovered that the shots had torn up the track and had thrown out slate and rock upon it. Gardner directed appellee to clean up and nail down the loosened track so the coal car could pass in and out. Appellee followed Gardner's instructions and began to clear up the track without making any particular examination or inspection of the effect of the shots on the parts of the wall and entry roof in close proximity to them. While engaged in this work, Gardner, who was driving the entry, passed by and called the attention of appellee to the condition of the rock. Gardner said that he told appellee that the rock was swagging and to look out for it. Appellee testified that Gardner passed by and said "lookout for that rock;" that he looked up and could not see any rock in a dangerous position; that while he was cleaning up the track Alex Gardner passed through the entry under the rock several times; that he did not understand by Gardner's remark that there was any immediate danger from a rock; that it was smoky in there and he could not see very well.

All the witnesses testified, over the objection of appellant, that, after the shooting, the entry was darkened by the smoke occasioned by the shooting. While nailing down the rail, the rock fell upon and seriously injured appellee, which injury was permanent in its nature. When the rock fell, it broke off square with the rib or wall and fell almost entirely across the floor of the entry. The evidence showed that it was the duty of the appellant company to inspect and look after the safety of the top or roof of the entry; that, after entering the room-neck and room, it was the duty of the employee to make a careful inspection of the roof to the neck or room, and parts within reasonable distance of where the shots had been fired, before going to work. There

was a conflict in the evidence as to whether it was the duty of an employee, who was just turning a room-neck, to make an examination of the parts above and near the shots after same had been fired, before going to work.

(1)  It is first insisted by appellant that the court erred in admitting evidence as to the smoky condition of the entry, occasioned by the blasting or firing of shots. The reason assigned for the inadmissibility of the evidence is that no allegation was made in the complaint that the smoky condition, resulting from firing shots or blasting in the mine, contributed to appellee's injury, or was occasioned through the negligence of appellant.  It is true no allegation was made in the complaint charging appellant with negligence by failing to provide sufficient ventilation to drive the smoke out after blasting or firing shots, before the men returned to work, or that the smoky condition contributed to appellee's injury; and also true that no motion was made to amend the complaint to conform to the proof made as to the smoky condition after the blasts or shots.  We do not understand, however, that appellee based his claim for damages on the neglect of appellant in allowing a smoky condition to exist or remain in the entry or mine after the shots were fired, nor do we understand that the court submitted the case to the jury on that theory.  It will be remembered that appellant interposed defenses of assumed risk and contributory negligence on the part of appellee.  Those doctrines imposed the duty upon employees to take notice of obvious or apparent conditions or dangers.  We think the evidence of the smoky condition existing after the blasts or shots was competent as tending to show that the danger was hard to detect and not obvious or apparent to the observation of an ordinarily prudent or careful man.

(2)  It is next insisted by appellant that the undisputed proof showed it was the duty of appellee to inspect the wall and roof of the entry after the shots were fired, and that he returned to work without making an inspection, thereby contributing to his own injury.  The evidence

showed that it was appellant's duty to inspect and make the roof safe, and was in dispute as to whether it was appellant's or appellee's duty to inspect the wall of the entry after shots were fired in turning a room-neck. It is more reasonable to suppose that the rock fell from the roof than the wall, because it fell clear across the entry. The further fact that it broke off square with the wall strongly indicates that it fell from the roof. So the contention of appellant that the undisputed proof established contributory negligence on the part of appellee is not sustained by an analysis of the evidence.

(3)   It is also insisted that the undisputed evidence shows that the danger was obvious and apparent, and, for that reason, appellee should have been held to have assumed the risk. Appellee testified that he looked up when Alex Gardner told him to look out for that rock, but could not see anything that looked dangerous; that Gardner passed to and fro under the rock after speaking to him; that he did not gather from Gardner's statement that he was in any immediate danger. The rock that fell and injured appellee was a part of the roof, and, even though protruding from the wall, was not necessarily or obviously dangerous. If firmly embedded, it would not fall, and the duty to ascertain that fact rested upon appellant, and not appellee. The danger was not so apparent or obvious that it can be said as a matter of law that appellee assumed the risk.

Again, it is insisted that the court erred in giving the following instruction to the jury: "The grounds of negligence are that the mining company failed to furnish the defendant a safe place in which to work. You are instructed that it was the duty of defendant to use ordinary care to furnish to the plaintiff a reasonably safe place in which to labor and that this duty involves the further duty on the part of the defendant to make a reasonable inspection to discover dangerous conditions in and about the place plaintiff was laboring in order to render said working place in a reasonably safe condition."

It is said that the instruction told the jury in the first sentence that appellant failed to furnish appellee

a safe place to work. We do not think the sentence referred to is susceptible of the construction placed upon it by learned counsel for appellant. The meaning of the sentence is that appellee had alleged as a basis for recovery that appellant had negligently failed to furnish appellee a safe place in which to work. The second sentence in the instruction and the language in other instructions bearing upon the same point clearly show that the cause was sent to the jury upon the theory that there could be no recovery unless appellant negligently failed to furnish appellee a reasonably safe place in which to labor. Again, it is said that the instruction is erroneous because it imposed upon appellant the additional duty to make a reasonable inspection in order to make said working place reasonably safe. We think the proof in this case made it the duty of appellant to inspect the particular place where appellee was required to work in order to render the place reasonably safe. He was working under the roof of the entry, and all the witnesses testified that it was the duty of appellant to inspect the roof and make it safe. The testimony of Ben Garrison was to the effect that in this mine it was the duty of the rock man to make an inspection every day. The following questions and answers appear in his evidence:

"Q. How many rock men have you in that mine?

"A. Four.

"Q. What do these four rock men do?

"A. Clean up the falls and take down rock that is dangerous, you might call it.

"Q. I will ask you if it is the duty of these four rock men to make an inspection of all working places and entries in the mine every day?

"A. Yes, sir."

Lastly, it is insisted that the court committed reversible error in refusing to give instruction No. 2, requested by appellant. This instruction was based upon the theory that the injury was the result of an accident which could not have ordinarily been anticipated and avoided. We find no evidence in the record supporting

such a theory.   The evidence tended to show that the injury resulted from negligence of either appellant or appellee, or both.   An instruction on the theory of accident would have been abstract.   No error was committed by the court in refusing it.

No error appearing in the record, the judgment is affirmed.